**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**ASHLEY HERRERA,**

    **Plaintiff,**

**v.**                                                                                                                               **No. 20-cv-0663 SMV**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration,[1]**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21], filed on March 16, 2021. The Commissioner responded on June 10, 2021. [Doc. 25]. Plaintiff replied on June 24, 2021. [Doc. 26]. The parties have consented to my entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") erred in evaluating the opinion of Dr. Steinman. Specifically, the ALJ failed to give good reasons for rejecting his opinion that Plaintiff would need "continuous supervision" while working. This is especially so considering that the non-examining physicians explicitly agreed with Dr. Steinman and considering that the limitation would likely result in a finding of disability. The Court declines to pass on Plaintiff's other allegations of error at this time

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

because they may be made moot on remand and reevaluation of Dr. Steinman's opinion. Accordingly, the Motion is well-taken and should be granted.   *See* 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481 (1980).  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## **Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2015); 20 C.F.R. § 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920 (2012); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff is a young woman who suffers from cerebral cavernous malformation, which required three brain surgeries as a child/adolescent. *See* Tr. 28. She has seizures, headaches, and borderline intellectual functioning. Tr. 25. She was in special education throughout school, Tr. 26, with an individualized education plan ("IEP"), Tr. 29. She applied for supplemental security income on December 15, 2016, at age 18. Tr. 22. She alleged a disability-onset date of May 1, 2016, *id.*, but she later amended it to her application date, Tr. 50. ALJ Lillian Richter held a hearing on May 7, 2019, in Albuquerque, New Mexico. Tr. 22, 48. Plaintiff appeared in person with her attorney. Tr. 46–91. The ALJ heard testimony from Plaintiff, Plaintiff's grandfather, and an impartial vocational expert ("VE"), Thomas Greiner. *Id.*

The ALJ issued her unfavorable decision on November 5, 2019. Tr. 34. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 24. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "seizure disorder, headaches, cerebral cavernous malformation, head injury, obesity, lumbar fracture, mild neurocognitive disorder, and borderline intellectual functioning." Tr. 25. The ALJ found that the following impairments were not severe: gastroesophageal reflux disease, subdural hematoma, subarachnoid hemorrhage, asthma, constipation, knee sprain, allergic rhinitis, stomach pain, and gastritis. *Id.* She found the following complaints did not qualify as "medically

determinable impairments" because of the lack of clinical diagnoses and/or treatment: abdominal pain, anxiety, and attention-deficit hyperactivity disorder. *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 25–27. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 27–33. The ALJ found that Plaintiff had:

> the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967(b) except [Plaintiff] can perform simple routine and repetitive work. [Plaintiff] can hear, understand, and communicate simple information. [Plaintiff] should avoid exposure to unprotected heights, hazardous machinery, and other workplace hazards such as hot or sharp objects. [Plaintiff] cannot operate a motor vehicle. [Plaintiff] can make simple work related decisions in a workplace with few changes in the routine work setting. [Plaintiff] can perform work that does not require significant reading or reading comprehension.

Tr. 27–28.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 33. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 33–34. She found that Plaintiff could perform work—such as advertising material distributor, marker, and silver wrapper—that existed in significant numbers in the national economy and, therefore, was not disabled. Tr. 34. The Appeals Council denied review on May 8, 2020. Tr. 1–3. Plaintiff timely filed the instant action on July 7, 2020. [Doc. 1].

## **Discussion**

The reasons provided by the ALJ for rejecting a portion of Dr. Steinman's opinion—that Plaintiff would need continuous supervision at work—fail to provide for meaningful review. On a cursory read, the ALJ's reasons seem logical enough. *See*. Tr. 30. On deeper study of the record

and the ALJ's decision, however, the Court cannot follow the ALJ's rationale, especially considering that Dr. Simutis and Dr. Blacharsh explicitly agreed with Dr. Steinman about "continuous supervision." Tr. 104, 117. Critically, it appears that if this limitation had been accepted by the ALJ and incorporated into the RFC assessment, Plaintiff would likely have been found disabled. *See* Tr. 88 (testimony of VE).[4]

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii) (2012)[5]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* § 416.927(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. Social Security Ruling ("SSR") 06-03p,[6] 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision is sufficient

---

[4] At the hearing, the ALJ asked the VE about "frequent reminders from supervision to remain on-task, would that affect competitive employment?" Tr. 88. The VE said it would result in a "special accommodation" not normally provided to workers. *Id.*

[5] This regulation applies to this case because Plaintiff's application was filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

[6] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's application was filed before March 27, 2017, SSR 06-03p applies to this case.

if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted). "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 416.927(d) apply equally to all opinions from medical sources who are not acceptable medical sources as well as from other non-medical sources." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted). *See* § 416.927(c) (for claims such as Plaintiff's, filed before March 27, 2017, the general rule is that examining opinions are entitled to more weight than non-examining opinions, and treating opinions are entitled to the most weight of all).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[7] 1996 SSR LEXIS 2, at *13, (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing § 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the

---

[7] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Here, Dr. Steinman performed a consultative psychological examination of Plaintiff on April 15, 2017. Tr. 504–08. At issue is Dr. Steinman's opinion that, if working, Plaintiff would "likely . . . need continuous supervision." Tr. 508. On April 18, 2017, Dr. Simutis reviewed Dr. Steinman's opinion, as well as the entire record as it stood at the time, and agreed that Plaintiff "[was] able to carry out the tasks she understands. Her memory is very poor and she is likely to need *continuous supervision*. With direction, she should be able to adapt to changes in routine or in circumstances." Tr. 104 (emphasis added). On November 24, 2017, Dr. Blacharsh reviewed the record (including the reports of Dr. Steinman and Dr. Simutis), and she agreed with them, affirming their assessed restrictions. Tr. 117.

Nevertheless, the ALJ rejected the restriction. Tr. 30; *see* Tr. 27–28 (RFC assessment, which does not include the restriction). In explaining her rejection, the ALJ reasoned that Dr. Steinman's conclusions were (1) not consistent with other evidence showing Plaintiff was not having frequent seizures, (2) not consistent with Plaintiff's ability to independently perform daily activities, (3) not consistent with Dr. Monzones's opinion, and (4) not well supported by any objective evidence "during his examination." Tr. 30. Plaintiff argues that these reasons cannot sustain the rejection of (this portion of) Dr. Steinman's opinion. [Doc. 21] at 14–16. Defendant maintains that the ALJ properly evaluated the opinion, and her reasons were supported by substantial evidence. [Doc. 25] at 5–7. The Court agrees with Plaintiff. The ALJ erred in rejecting Dr. Steinman's opinion on the grounds stated in her decision, especially considering that

Dr. Simutis and Dr. Blacharsh agreed that Plaintiff would need "continuous supervision." Tr. 104, 117.

First, the ALJ "specifically note[d] that [Dr. Steinman] appear[ed] to rely on [Plaintiff's] report of frequent seizures, an assertion that [was] not consistent with the medical evidence . . . showing that the [Plaintiff's] seizures were well controlled on medication at the time of Dr. Steinman's examination." Tr. 30. This finding is not supported by substantial evidence. Dr. Steinman's report cannot reasonably be read to mean that Dr. Steinman believed that Plaintiff actually was having frequent seizures. *See* Tr. 506–07. Instead, Dr. Steinman noted Plaintiff's claims of frequent seizures as an illustration of her unreliable self-reports. *See id.* Dr. Steinman twice juxtaposed Plaintiff's reports of frequent seizures with reference to a medical record showing Plaintiff had not had a seizure in two years. *Id.* He went on to describe Plaintiff as a "poor personal historian." Tr. 505, 506. There is not substantial evidence to support the ALJ's finding that Dr. Steinman was under the misapprehension that Plaintiff was having frequent seizures at the time his evaluation.

Second, the ALJ found that Dr. Steinman's limitations were inconsistent with Plaintiff's ability to independently perform activities of daily living ("ADLs"). Tr. 30. She explained that the "recent medical evidence, expert opinions, and hearing testimony" showed that Plaintiff was "independent in her ability to perform daily activities." *Id.* The Court fails to follow this reasoning. Dr. Steinman (as well as Dr. Simutis and Dr. Blacharsh) believed that Plaintiff would need "continuous supervision" in order to perform at work. Tr. 508 (Dr. Steinman's opinion), 104 (Dr. Simutis's opinion), 117 (Dr. Blacharsh's opinion). Without more developed explanation, the Court fails to follow how the ability to independently perform ADLs is inconsistent with the

doctors' opinions.  If Dr. Steinman had opined that Plaintiff required continuous supervision for every activity in her everyday life, then the ALJ's reasoning would make sense.  But Dr. Steinman's report is not ambiguous.  In his "Summarized Conclusions," Dr Steinman notes:

| Interactions: | Public: | She is able to relate positively with others. |
| | Co-workers: | With direction, she is able to relate productively with co-workers. |
| | *Supervisors:* | *She is likely to need continuous supervision.* |

Tr. 508 (emphasis added).  Dr. Steinman's opinion is that Plaintiff would need continuous supervision in order to work.  *Id.*  This limitation is not obviously inconsistent with the ability to perform ADLs, and the ALJ does not further explain.  *See* Tr. 22–34.  This reason does not provide for meaningful review.

Next, the ALJ found that Dr. Steinman's opinion was not consistent with Dr. Monzones's neuropsychological evaluation because Dr. Monzones described Plaintiff as "insightful regarding her difficulties, engaged and attentive and highly motivated to perform."  Tr. 30 (ALJ's decision), *see* Tr. 1069–80 (Dr. Monzones's opinion).  As with Plaintiff's ability to perform ADLs, without some further elaboration, the Court does not follow how these descriptions are inconsistent with the need for continuous supervision at work.

Lastly, the ALJ found Dr. Steinman's opinion (that Plaintiff would need continuous supervision to perform at work) was not well supported by any objective evidence during his examination.  Tr. 30.  A psychological opinion, however, "may rest either on observed signs and symptoms or on psychological tests."  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).  It is not clear what objective evidence the ALJ had in mind.  Certainly, there is no x-ray or blood test to determine how much supervision an individual might require at work.  Besides, the ALJ

saw fit to accord the opinion "some weight." Tr. 30. And Dr. Simutis and Dr. Blacharsh agreed with Dr. Steinman on this point. Tr. 104, 117. This reason does not provide for meaningful review.

## Conclusion

The Court cannot follow the ALJ's reasons for rejecting Dr. Steinman's opinion that Plaintiff would need "continuous supervision" at work, a limitation explicitly adopted and affirmed by Dr. Simutis and Dr. Blacharsh. Remand is warranted to reevaluation of Dr. Steinman's opinion. The Court declines to pass on Plaintiff's other allegations of error at this time, because they may be made moot by reevaluation of the opinion. Plaintiff's Motion will be granted.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 21] be **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings. *See* § 405(g).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**